I will tell you the story of the first time I appeared as an appellate lawyer when I was not there on time for the argument, and Judge Leventhal of the D.C. Circuit was not happy, and I will not yell at you as he yelled at me, but you should have been here. Your Honor, I have never been late for an appellate hearing yet, and I have several opinions. I apologize for the mistake when I talked to the clerk's office in San Francisco for some reason last week, just to find out who was going to be making the correct decision on my case. They said it was 9.30 this morning, so I made that. I see. All right. Thank you very much. What did you think of it? I was just really down on my luck. I had a reason to. Okay. Thank you very much. The case of BROTHER RECORDS v. JARDINE. Counsel. You may not have heard our statement about this. Oh, yes. You didn't hear. I don't know whether you've been served with the document that we were served with early this morning, and we said earlier that we have not had a chance to review it, and the argument should go forward as is. Your Honor, thank you. I wasn't even going to address that I was served with it when I walked in, but I appreciate that. May it please the Court, Philip Stillman, Flynn and Stillman, on behalf of BROTHER RECORDS. Your Honor, I think the first step in the process that we all have to approach is a standard of review. And the issue of whether race judicata or claim preclusion applies to the particular case is obviously a de novo standard of review as under the Western States case that Judge Canby was on. Whether or not an injunction should issue once we take up that issue of claim preclusion is obviously an abuse of discretion standard. In this particular case, it's BRI's contention, BROTHER RECORDS' contention, that the correct standard of review is de novo, specifically because Judge Huff failed to correctly apply the law regarding claim preclusion to the underlying case. And in so holding that claim preclusion did not apply, subjected that decision to a de novo standard of review. Thus, whether the Court reaches the abuse of discretion standard or not, Judge Huff's failure to issue the injunction is infected by an error of law, which is that he decided incorrectly that claim preclusion or issue preclusion did not apply to the case. Why aren't we bound by the California Court of Appeal decision? I'm sorry, Your Honor? Why are we not bound by the California Court of Appeal decision that this is not race judicata, i.e., either claim or issue preclusion? Well, Your Honor, that's the obviously the heart of the issue. And facially, there is an actual and or potential conflict between what BRI is asking the Court to do here and what the Court of Appeals did. But that is not an irreconcilable conflict. This Court, under both California Supreme Court law and United States Supreme Court law, is the arbiter of the scope of a Federal judgment. Now, if the California courts have already ruled and said there's no race judicata effect, we owe them full faith and credit, do we not? Well, Your Honor, I don't think that the Court owes the California Intermediate Appellate Court full faith and credit, because at the time that this case was filed in the district court, that decision was not final. But more importantly, It was final by the time the district court decided it had become final. No, Your Honor. It had not become final until after the appeal was filed in the case. So this Court had jurisdiction over that question prior to the time. Which question? Which case are you talking about? I'm talking about the lawsuit they brought in California, went up to the California Court of Appeals. By the time Judge Huff had ruled, ruled in the case, California Court of Appeals had decided the issue and had decided it was not race judicata. Am I correct about that? Yes, Your Honor. So that was final at that point. There might have been 30 days passed for the California Supreme Court possible review. So that was a decision by them that the trial court, California trial courts, was improperly granted because it was not race judicata or collateral estoppel effect. That was what they decided, correct? Correct, Your Honor. Now, if I understand the Supreme Court, they've told us, and some of our cases have told us, that where you didn't get in here fast enough and stop them, the race judicata is a full faith and credit question, and we give that deference. And that's the end of the race judicata branch of attempting to issue an injunction. Well, here's where I disagree with that analysis, Your Honor, and I'll be very brief. First of all, the California Appeals Court decision was not final. A petition for review was filed, so it was not a final decision when BRI filed for an injunction in the district court. Then the district court ruled well before the California Supreme Court denied the petition for review. I don't think you're arguing enough. It's final now, and it would bind us if it didn't bind the district court. But there are at least one or two California decisions saying that even a ruling that might be final for purposes of, say, appellate review is not necessarily final for race judicata until there's an actual final judgment that wraps up the case. Correct. And that was going to be my second point, Your Honor, that what is there that's entitled to full faith and credit? A reversal by the court of appeals simply reinstates the case. There's no final judgment from which to operate from. So if Judge Huff had simply said the following, I — there is a California court of appeals opinion. I understand that it isn't binding on me as full faith and credit, but I also understand, and there's a Seventh Circuit case that says this, Ramadan or something like that. But I also understand that a state court has made a determination as to race judicata, and as a matter of comity and orderly proceedings, I choose to respect that opinion, and therefore, I'm not going to issue the injunction. That would be fine. Correct, Your Honor. So the only problem here is that he said, and I agree with it. Your Honor, you're correct. Judge Huff could have taken that position. He did not. His decision — It isn't totally clear to me that he did not, but he did say at some point something like they've said it, and not only that, I agree with it. But the not only that, I agree with it, could have been just throwaway. Here's the real nub of this issue, Your Honor, as far as I can tell. The full — what are we entitled to give — what is this Court obligated to give full faith and credit to? Ultimately — I'm not talking full faith and credit now. I'm trying to figure out whether Judge Huff essentially decided this on two alternative grounds. One of them is, you know, if you ask me, I think they were right about race judicata. But anyhow, they decided it. And full faith and credit or no full faith and credit, I'm not going to issue an injunction when they've already decided it. Well, I think if you look at the record, Your Honor, I think it goes much further — than Judge Huff, much further than that. And actually, I argue this specific point with Judge Huff on the bench. He actually said that race judicata did not apply to the case. He said the issues were not the same, that they were not decided, and that the Board of Directors, the defendants in the state case, were not in privity with Brother Records, the corporation, which in itself is just an incorrect statement of the law. I mean, the corporation, Brother Records, only acts through the Board of Directors. This is a closely held corporation with four directors. And — I wondered about this. It's a fiduciary duty claim, right? Yes, Your Honor. So wouldn't it be the directors and not the corporation that owe the fiduciary duty? Well, the fiduciary duty is owed by — according to the Court of Appeals, and I think it's under California law, a voting block. Each person has an — each of the four shareholders is a 25 percent shareholder. They're all equal. They all have the same rights. But what Jardine's theory, as presented to the Court of Appeals, it wasn't even briefed, was that a voting block of three directors owed a fiduciary duty to the one director who was a minority shareholder. Each one is an equal shareholder. And all I'm trying to say is that for many purposes, a corporation is in privity with the directors. But I'm wondering whether it is for this purpose where the obligation may only be one of directors and not of the corporation. Well, in this particular case, I think it's even more persuasive that there is privity because the very actions that were litigated in this case extensively and as found by this court two years ago is that the actions were taken by the corporation based on a vote of the disinterested directors. This court found, the trial court, the district court found, and the court affirmed that finding that there was no inequitable conduct by the corporation, that they acted — that the corporation acted in an even hand. Well, how does the corporation here act? It can only act through its three — its four board of directors. So when this court affirmed that finding by the district court — I understand that distinction, Your Honor. Here's my take on it. The corporation did not owe a — does not owe a duty to its directors, and it does not owe a duty to its shareholders. It's the converse. The board of directors owes the duty to the corporation.  Well, it may, in fact, be clearly a stop, but that's a different question, right? Well, I don't think it is in terms of the analysis that we're talking about here, because whether collateral estoppel or res judicata apply, the result is the same. These issues have been dealt with in this case and have been litigated in this case and decided in this case. Also, I noticed that the district court said the first time around that the — that with regard to what was the unclean hands argument made to him, it wasn't the grant of the exclusive license to love starting in 2000 was not part of the unclean hands, and so he wasn't assigning it. And that is in the other case, right? Yes, Your Honor. That is what the district court said in an oral argument. The problem with that is — and this is why I included the statement of facts — that issue, that precise issue was actually litigated in the summary judgment papers. I mean, there's a series of factual statements. But the judge said he wasn't assigning it. Originally, not now, I'm saying — he originally said he wasn't assigning it. I understand that. My point is that it was included in the record, and even if it wasn't, although it was, the scope of res judicata claim preclusion or collateral estoppel — well, I'm sorry, claim preclusion extends to those facts which could have been raised in support of the argument but were not raised. And that makes some common sense. Certainly at the appellate level, you don't want a plaintiff or a defendant holding back his arguments or defenses only to spring them at some other time and say, oh, well, these facts were not decided. So that is why, no matter what Jardine raised or didn't raise, it all falls within the scope of what was litigated or could have been litigated. Now, turning back to the issue of what the court of appeals actually decided in the unpublished decision, first of all, the question is what respect does the court of appeals decision unpublished have on other courts in California, which is there's no precedential effect. No, but it's res judicata. That's simply not true if you're making a res judicata argument. Well, it's law of the case. No, no. A res judicata. I'm not talking about a law of the case. I'm talking about a res judicata argument. Of course it has effect. Well, it's an unpublished opinion. So what? And by the way, there are California cases that you don't have to have a final judgment on the whole case. All you have to do is have a final resolution of the issue, and the court of appeals finally resolved that issue. Yes, Your Honor. I believe it's a little bit disingenuous to say that if you're, if they now go and file another lawsuit or somebody files another lawsuit, that their court of appeal decision is not res judicata in their lawsuit. Well, here's the point. The trial court decisions aren't res judicata. I certainly don't want to be disingenuous. I don't mean to be. But here's the issue, as far as I can tell from the court of appeals decision. The only thing that they ruled on, the actual holding of the case, is that Jardine could state a claim for a diminution in only his share of value. That's the only thing that was left alive by the court as a different primary right. And so at this point the – I'm sorry, but which court? I'm sorry. The court of appeals, the California court of appeals in their unpublished decision had found only that Jardine could state a claim potentially without running a file of res judicata as to a claim for diminution in share, in his own share value. And what about that? It seems to me that – Well, that's what he wants to enjoin. No, what I'm – What does he want enjoined? What I'm proposing to the court, I would like the court to enjoin the entirety of the prosecution for the simple reason that that specific claim, a damaged claim, could have been raised in the – in opposition to the summary judgment motion. I understand that. What you want us to do is enjoin the California proceedings on the basis of Federal preclusion law. I understand that. The problem is you didn't come to us to get here first. The California court has finally ruled that there ain't none. And the question is, do we owe that credit? I understand if we were left to our own devices. I think California court of appeal was probably erroneous on the merits of whether there was claim preclusion. That's not really the question, whether they erroneously decided the claim preclusion question, is it? No. That's definitely not the issue. Are we bound by their decision? My point to the Court is that at the very minimum – and I ask Judge Huck for this relief – at the very minimum, Jardine should be enjoined from prosecuting any claims other than the diminution in his own share value, which was recognized by the court of appeals. But Judge Huck said that if there's a later reason to enjoin it, I will. Too late, Your Honor. Why am I too late? I mean, if – As soon as somebody starts to put on the evidence, you go, well, Judge Huck, unfortunately, is no longer with us. But you go running back to the central district and you get somebody to say, stop, you can't do this. This is what Judge Huck said. But, Your Honor, then you're – then you run – I have – then you run really afoul of the Parsons-Steele problem of finality. At least where we are today, the court of appeals, this court, already had jurisdiction by the time the decision itself became final under California law. Once there's a ruling here and there's finality, once we're back in court, Jardine could literally make arguments and it's up to the state court to rule on them. And this court doesn't have the ability at that point to protect its own or interpret its own judgment, whether the court of appeal is correct or not. But it's not final as to those issues. I mean, the – they said that he could only prosecute this. So if he goes ahead and prosecutes something else, there's certainly no judgment saying that he can do it. Well, that's correct, Your Honor. I mean, as far as – Correct. So that's why it isn't so that if there's a problem down the line, it couldn't be dealt with. Well, I would like to agree with you and say I could go back and do that. I don't think – I'm not sure that I can. I think because right now we're here. This is the issue that's presented. This Court is well within its rights to say whatever the court of appeals decision was, Jardine is at least enjoined from prosecuting any claims other than what was recognized by the court of appeals in California. What court of appeals? You say court of appeals. Are you talking about us? The state court of appeals. Appeal. I'm sorry. The state court of appeals. If you read the singular, I won't get confused. I apologize, Your Honor. I would like to save some rebuttal time for the argument. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court that I am Lawrence Noble. I am here today to argue for the appellee, Alan Jardine. Mr. Jardine is not present in court. I'd like to focus on just a few facts or a few issues that may be helpful to the Court. One is there was a statement made by Brother Records before Judge Hupp in its motion to Judge Hupp for enjoinder. That appears, I think, starting at page 566 in the excerpts of record. And it's about 20 pages long. That, for some reason, these pages were admitted from the original excerpts of record. I filed my appellee's brief without having benefit of these pages. And in response, Brother Records ---- Well, at the time, I was unable to locate them. They weren't in the excerpts at that time. But the whole point I'm trying to get to is even before Judge Hupp, Brother Records argued at page 572 that the only limitation on a federal court's power to issue a relitigation injunction is when there's been a final adjudication of the race judicata issue. So even before Judge Hupp, Brother Records had apparently conceded this point, which they seem to have ---- For some reason, this argument did not find its way into the appellate's opening. What point did they just concede? I don't understand. Well, they argued that the only limitation was a final adjudication. There has been a final adjudication in state courts. Well, that may be arguable. There are California authorities saying that a ruling really isn't final until the whole case is wrapped up. Well ---- Even though the issue's been determined for all practical purposes, finally, it's only the law of the case until the final judgment issues. And when the final judgment issues, then it becomes race judicata. Well, the California Supreme Court did deny Brother Records' petition for review on ---- On that issue. But they haven't ---- there's no final judgment in the state court action yet. That's correct. That is correct. Yes, Your Honor. That's right. In any event ---- So the next time it's coming up to the court of appeals, they could say, well, it's the law of the case that this was race judicata, but we've decided to reexamine that. Okay. That means that other courts in California don't yet have to give it race judicata effect. And if other California ---- all we have to honor from the California Court of Appeals, we have to give their judgment the same effect that it would have under the law of California. I agree with the court. I respectfully agree. Then maybe we're not bound. Okay. Your Honor, we have ---- or Mr. Jardine has approached his argument in terms of direct and specific reading of Judge Hupp's order, which we attached as an exhibit to the appellee's brief. And in the appellee's brief, I feel I didn't go quite far enough when in describing that order, when I said that Judge Hupp did not directly refer to the Anti-Injunction Act or to any federal statute. But in preparing for this argument and rereading Judge Hupp's order over and over, it occurred to me that Judge Hupp has made numerous factual findings, six that I count, in his order which directly defeat the exception to the Anti-Injunction Act. Let me ask you, Michael, the same question. Suppose he didn't defeat it. And suppose he still doesn't have to issue the injunction, right? Correct. And is it so when in reading his order, he certainly gave reasons why he didn't care to issue the injunction, why he didn't think it was necessary to issue the injunction. Is his ---- so if we decided that his passing reference to the fact that he agreed with the California Court of Appeals decision were wrong, let's say that we thought that for these competing considerations of whether there was finality or not finality, we chose one and we decided he was wrong, would that mean that we would have reversed and sent it back again? Or would we say, well, it doesn't really matter because he essentially went on to say that he wasn't going to issue the injunction anyway? I agree that I believe it doesn't matter because he wasn't going to issue the injunction. In stating his reasons, he stated specific factual reasons why the state, California State Court of Appeals decision in no way challenged the Federal Court's decision. But that goes to the merits of whether there was res judicata or wasn't res judicata. Anyway, go ahead. Okay. Well, Your Honor, it is my view that even an incorrectly decided opinion, and I understand the Court's view that it might have been, is still entitled to full faith and credit by the Federal District Court. I understand I was not counsel at the time that Judge Hupp ruled on a motion for summary judgment. He is familiar with the facts and the issues in this case. And when he made his written ruling denying the injunction, he had that background in front of him. He seemed as if he took pains to make the point that there, the facts defeated any exception to the anti-injunction statute, even though he didn't specifically refer to the federal statute. But he does make specific findings of fact that seem designed to support his opinion when confronted with the federal statute. Again, he doesn't specifically refer to the federal statute. He also goes on to draw the conclusion that the state court of appeal decision in no way challenges the federal court's decision. I believe the purpose or justification or the anti-injunction exception is to protect the federal judgment from attack, impairment, or derogation by a state court. Judge Hupp apparently felt that his federal judgment was not being impaired or derogated in any way by the state court of appeal decision in the case. So he was giving, apparently giving full faith and credit to the state court of appeal. But I think it may not be correct to say that Judge Hupp did not have the federal law in mind at all, even though he doesn't discuss the federal statute. Kagan. Well, we're assuming that. I mean, I think you're spending a lot of time on something that just doesn't matter at all. Okay. All right. So, I mean, the case seems to have proceeded on the understanding this is all about the anti-injunction act, so what's next? Okay. I would like to also address the issue of privies or privities. Brother Records cites a case, Amalgamated Sugar. And in that case, the court made specific factual findings of how vigorously that case had been litigated, the number of witnesses, the number of depositions. I think there were 9,000 pages of documents produced. So in Amalgamated Sugar, the court had findings in the record to make a ruling on as to whether or not there were privies represented in the case. That ruling, there are no specific facts in this record to support any ruling, additional ruling that there were privies. Brother Records seems to argue that once there is an issue of claim preclusion, that no shareholder is entitled to the protection provided by the corporate veil. That's not the way I have read Amalgamated Sugar. But certainly, Judge Hupp made no record, factual record, supporting the application of the ruling in Amalgamated Sugar. So I respectfully assert that Brother Records cannot use the argument of privies to bind the shareholders who were not parties in the federal lawsuit. They're not trying to bind the shareholders. They're trying to bind their client who was a party to the litigation. And they're saying, I think, that he can't come into state court and assert the same claims all over again if it's inconsistent with what the federal court held. Well, Your Honor, the state court of appeal, even though seeming to recognize that there were similar facts, found a different primary right that Mr. Jardine was attempting to vindicate in the state court. Which isn't the test, of course, under federal law. But, I mean, we have one thing which we can set aside. It is the state court of appeal decision entitled to full faith and credit. But if we're going down, putting that aside for a minute and going down the other alley, if we're not bound by it, are there still reasons to uphold the decision of the district judge? And that's kind of what I'm exploring here. I would respectfully say that there are reasons, and those reasons are the specific factual findings that the district court made in its ruling. I'm really confused. As I understand it, those factual findings, every time you got into them, were findings with respect to why the race judicata ruling of the court of appeals, state court of appeal, was correct. Got it. That's all you're talking about when you're talking about the factual findings. All right. And we, among us, have established that we have some – there are two views which are both interesting and complicated as to whether what the state court of appeals did has to be respected in and of itself or has to be determined separately by the federal court. But if the federal court was to decide the issue itself, wouldn't it apply federal law? Anyone decide primary right theory? I believe it would, Your Honor. Right. In other words, okay. I'm sorry. So why do the factual findings matter? Well, I would presume that if the federal court were deciding, it would be relying on the findings of fact made by the district court. We don't care about primary rights theory if we're applying federal law, correct? We only care about transaction. That is correct, Your Honor. Okay. So the district court seemed to say, I like the way the state court of appeals decided this case, and it decided it on primary rights theory. We know that's wrong. There isn't. That may be. Let's just say we'll stipulate for the moment that's wrong. It should have been applying transaction. The reason then would be that when Mr. Jardine attempted to litigate the fiduciary duty claim before Judge Hupp, he filed it. It was late in the day. Brother Records objected to his being permitted to add that breach of fiduciary duty claim to his counterclaim. And so Mr. Jardine was denied the opportunity to fully litigate the breach of fiduciary duty. What difference does that make? It means that procedurally he didn't put the claim in soon enough to get it adjudicated properly under federal rules. So does that mean that he gets to keep it forever? No, no, no. If I go in and I raise a negligence claim, and now we're beyond the amendment cutoff date in federal court, we're beyond, we're three days before trial, and I make a motion to amend to include an intentional tort claim of some kind, and the judge says no, that doesn't mean I'm going to escape transactional race judicata, does it? No, Your Honor. So how does he escape it here? Because he comes in late in the day with a new claim. Well, Your Honor, we have not briefed that particular issue. I do not have cases at my fingertips. I have a related question. What was the attempted amendment in state, in federal court? Was it, was the fiduciary duty claim the same one that was ultimately filed, that is, one relating to his status as a shareholder? Yes, Your Honor. That's what he tried to add. Yes. Apparently the state court complaint is a copy of the rejected amendment in federal court. So it was an attempt to bring in additional parties as well as additional claims, then? Yes. I would like to, let's see, I have five minutes left, Your Honor. Are there any other concerns or issues that the Court would like me to address? Well, I have this procedural question that I raised before, which is let's suppose that we agreed with the appellant that, A, there was no final judgment with regard to race judicata that had to be respected, and even, B, that the race judicata ruling of the state court was incorrect as a matter of federal law, if it were done alfinitio. Where does that leave us with regard to the question, what do we do then? Do we remand for a determination of whether to issue the injunction nonetheless, or do we say, well, the district judge essentially had alternative reasons for not doing this? One of them was his understanding of the race judicata, but the second one was that he didn't really trust the state court and did not want to interfere with what they were doing. What do we do with that injunction? Well, we obviously, I would prefer that we accepted the judgment. I know what you prefer, but I want to know a reason for what you prefer. Well, if there is a question as to what was on the district court's mind, because it wasn't fully articulated, then perhaps a remand might be appropriate to have the record augmented. Of course, now you're going to be before a different judge who knows nothing more than you and I and the three of us about what happened here. So I guess the question is, what does that judge do about it? Does the judge rehear the entire matter, or, which probably would have to be done, and reopen the entire case below, or? Well, frankly, Your Honor, as I'm thinking out loud, I guess if it were remanded, the judge would have to rehear the entire matter all over again. I don't know any of the federal matter. Then you can do it. That would be three parallel litigations going on at once. It's a good way to resolve disputes. It's not. We would prefer, obviously, well, I would argue that every deference should be applied to Judge Huff's thought process. And what he says at the end is the Court has confidence in the State court to recognize these issues and apply the correct preclusion rules when they come up. The accuracy of the State court's appeals decision leaves this Court to have confidence that no injunction is necessary. But he's kind of – he's always interweaving the confidence with the fact that he thinks they were right. So he's never quite separated out those – he never separates out the questions and says simply because they decided it, I'm going to go – I'm not going to enjoin it, without regard to whether they're right. That's really the problem. I understand. It appears that Judge Huff agreed that the State – that Mr. Jardine did have a right to argue an additional or separate primary right in the State court that he had not addressed – that Judge Huff had not addressed in the district court proceedings. For one thing, he never – because he denied the proposed amendment as late, he never addressed himself the question of whether it would have been an appropriate amendment otherwise. So he never actually addressed the question of whether it could have been brought in the Federal court. That's correct. He never addressed the question of whether because of its shareholder emphasis it was no longer really the same transaction. If he had applied transactional analysis, he just never answered that question the first time or the second time, really. He did not. Okay. Thank you, Your Honor. Thank you, Your Honor. Your Honor, I'm going to touch on briefly a few things. First of all, what do we do – the question was what does the Court do if you agree with Brother Records on this issue? On what issue? On whether or not the case – if the case is remanded or – I mean, what to do with the case if the case is remanded. What to do with the case if the Court agrees with Brother Records' position that an injunction – that it was improper. That isn't the question. The question is what – not – is whether – what we do if we agree with your position with regard to the finality of the Rice-Judicata decision. That doesn't – the whole problem here is that doesn't say whether the injunction was proper or improper. Well, in my – at least from the practical position, this Court is in as good a position as any, especially given the published decision in Brother Records v. Jardine, to simply reverse and remand with instructions to enter an injunction if the Court believes that to be appropriate. Having a new judge sit on – But that doesn't seem even vaguely possible because the injunction is ultimately discretionary, even if it comes within the exception. So the question is even if we thought that it didn't come within the exception,  Well, if the Court – I think that the Court could only because of the existing published decision, but if the Court were willing to – wanted to remand, then the solution would be to put it in front of a Federal judge on the district court who would then look at the evidence that's presented and make a ruling first on – as to whether an injunction should issue is subject to its discretion. Now, Mr. – Mr. Noble said – Are you aware of the Seventh Circuit case, Ramsden? Yes, Your Honor. All right. Doesn't – wouldn't it – as I understand its holding, it is that even if a State court makes a ruling with regard to res judicata and it isn't final, because I gather Wisconsin has a similar rule to the one here, still the district court should mandatorily respect that determination, whether it's final as a matter of res judicata law or not. Now, if we were to adopt that position, you would lose. Is that correct? If you – if you were to adopt that position, we would still be – we would still be able to win as I – as I distinguished in my – in my opening argument, and that is that Jardine should still be enjoined from every – from litigating anything other than what was recognized in the Court of Appeals decision as exempt from the res judicata analysis, flawed that it would be. Why would a district court want to enjoin a State court from doing what it said it was going to do anyway? That's the re-litigation – that's the very nature of the re-litigation injunction is to enforce the power of the court. But they already said they weren't going to do it. If you're going to respect the Court of Appeals, you don't go ahead and enjoining the courts from doing something that the State Court of Appeals told them not to do. Well, if – the problem is that this case – there's either finality in terms of respect of the decision or there isn't. And it – and the solution of coming down – coming in again and re-briefing the issue in the district court at some later date if it becomes an issue I think is – is not the efficient way to do it. The efficient way is to deal with what the scope of the federal judgment is right now, which is a matter of federal law under the transactional test, not under the primary rights theory or any other theory. Ordinary injunction theory. You don't go around issuing injunctions about something that hasn't happened yet and that you have every reason to think that won't. Well, I think in a – I think in the relitigation injunction situation, this is what – this is what every federal court grapples with in the – in the distinction between the federal and state systems is the fact that there is a State court with similar issues before it as have already been litigated in the federal court. And somebody is coming into federal court and saying, we've already played this game and won it. That's right. And in this instance, the State court agreed with that and said you can't do that. So why are we going to go and join them from doing something they've already said they're not going to do? Well, there's a – because the court of appeals decision just reverses and says this about this little piece of the case left, but it does not affirmatively state anywhere that that's all there is and that there's no other possibilities on amendment. What it does is it narrows this very little issue, which, by the way, is not even and send it back down to the court. We, as Brother Records, does not want to be in a situation of having to come back again and litigate over what they can – what Jardine can and cannot bring to the table. And in fact, Jardine in his papers, and it's in the appellate record, says that this is the same claim. It's the same nucleus of facts. It's the same claim that he attempted to file in this case, in the federal case, that ultimately became the State court case. So he's already acknowledged in his own papers the transactional test is met here. That's not what I heard you say. I heard you say that it's the same as the one he attempted to file, which isn't necessarily the one that he did file. But anyway, thank you very much. Thank you very much for your time, Your Honor. The case of Brother Records v. Jardine is submitted, and the court is in recess until tomorrow morning. Thank you.
judges: Canby, Fernandez, Berzon